Mr. Lyndon L. Olson, Jr. Chairman State Board of Insurance 1110 San Jacinto Boulevard Austin, Texas 78786
Re: Reconsideration of JM-88: Whether the Insurance Code per se prohibits certain financial arrangements between a life insurance company and its subsidiary which is compensated on a percentage of annual premiums written.
Dear Mr. Olson:
You have requested a reconsideration of JM-88 regarding whether all financing arrangements between a parent life insurance company and an affiliate which are based on a fee computed on a percentage of annual premiums written are per se prohibited by article 3.68, or whether they are subject to the fair and reasonable test set out in article 1.29 and article 21.49-1, section 4, of the Texas Insurance Code. You have not raised any question about the reasoning of JM-88 that article 3.68 applies to arrangements between foreign corporations regarding out of state business, and we reaffirm the conclusion of JM-88 as to that matter. However, upon reconsideration, we withdraw those portions of the reasoning and conclusions of JM-88 which hold that any arrangement by which a life insurance company pays a fee based on the number of policies sold, to a subsidiary having the same president and secretary as the parent company per se violates article 3.68 of the Texas Insurance Code.
The question addressed by JM-88 asked whether a life insurance company was permitted to compensate another corporation with officers in common for the provision of certain services, when such compensation was based on a percentage of net premiums received by the insurance company from non-Texas business. You advised that it was the long-standing construction of your agency that article 3.68 prohibited certain "officers" of a life insurance company from receiving any compensation based on a percentage of the business produced by their company. Our attention was called to a letter dated May 29, 1926, from an assistant attorney general regarding article 4745, V.T.C.S., which was later transferred unchanged to article 3.68 of the Insurance Code. See Attorney General Letter Opinion Book 281 (1926), page 106.
The only other application which we found of article 3.68, also in its prior codification as article 4745, is contained in Attorney General Opinion O-5913 (1944). Neither of those opinions dealt with the meaning of the prohibitory language in the statute as applied to the situation at issue in your request.
No legislative history provides guidance as to the meaning of the statutory language which was originally section 7 of a 1909 enactment, other than the 1909 title, which indicates that the statute was one "making it unlawful to pay certain persons for procuring insurance." (Emphasis added). Acts 1909, 31st Leg., 2d C.S., ch. 25, at 448. Nor does the subject matter of the remainder of that act give any further indication as to its purpose. Hence, we must ascertain the meaning and intention of the legislature from the language of article 3.68 as it has existed unchanged for over seven decades. See 53 Tex.Jur.2d Statutes § 130 (1964).
The language in question prohibits the payment to certain "officers" of "any commission or other compensation" if payment is (1) contingent upon the writing or procuring of any policy of insurance in such company; or (2) [contingent upon] procuring an application therefor by any person whomsoever; or (3) contingent upon the payment of any renewal premium; or (4) [contingent] upon the assumption of any life insurance risk by such company. Excluded from this prohibition of payment resulting from the listed actions are agents and solicitors. We think this exclusion is significant and is indicative of the objective of this statute. An insurance agent is routinely compensated by commissions based on his rates. Article 3.68 obviously prohibits payments to certain specified non-sales personnel — i.e. "president, vice president, secretary, treasurer, actuary, medical director . . . or . . . any officer of the company" — for the types of activities listed above, all of which constitute discrete steps in the sale of life insurance policies.
We think these references to specific steps in the process of life insurance sales clarify the meaning of the use of the otherwise ambiguous word "any" in the enumeration of each action. See Black's Law Dictionary 86 (5th ed. 1979). The nature and context of this list indicate that the prohibition is directed at particular, individual transactions and was intended to prevent only conflicts of interest between those persons who produce applications for insurance business in order to receive commissions therein, and those persons who have the responsibility to approve the applications for insurance on behalf of such companies and thereby bind them on the policy.
Indeed, two other Insurance Code provisions adopted in 1971 and otherwise unnecessary or conflicting support this result. Both article 1.29, a broad conflict of interest statute, and article 21.49-1, a comprehensive regulatory scheme for insurance holding company systems test the propriety of transactions within insurance holding company systems by standards of fairness, reasonableness, and other equitable bases. For example, section 1(c)(5) of article 1.29 allows:
 (A) Any transactions within an insurance holding company system by insurers with their holding companies, subsidiaries or affiliates that are not prohibited by law, that meet the test of being fair and proper, and that are regulated by other statutes; and (B) other transactions or arrangements not prohibited by law that meet the test of being fair and proper as prescribed by rules and regulations adopted by the State Board of Insurance.
Likewise, section 4, subsections (a)(1), (a)(2), and (d)(2)(iii) of article 21.49-1 establishes that such transactions as "rendering of services on a regular or systematic basis" are governed by standards including "fair and equitable" terms and "reasonable" charges and fees. Neither statute prohibits, per se, payments to the subsidiary service corporation based on the amount of annual net premiums issued, this being a measure of the value of work done by the affiliate for the parent company.
We see no basis for concluding that article 3.68 ever prohibited payments such as those at issue here. Transactions such as those you have inquired about which are based on the volume of business transacted are not prohibited by article 3.68.
 SUMMARY
A life insurance company may base its payment to a wholly owned subsidiary corporation, for services rendered by the affiliate corporation, on the net premiums received by the parent life insurance company without violating article 3.68, so long as the arrangement is consistent with article 1.29 and article 21.49-1, section 4, of the Insurance Code.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Prepared by Colin J. Carl Assistant Attorney General